May it please the Court, Elizabeth Barros, Federal Defenders of San Diego, for Mr. Thomas. Mr. Thomas is a severely mentally ill man who has been committed for approximately a year and a half, and who has been medicated for over 22 months, at one time on a toxic dose of one of his medications. Despite this, he continues to be incompetent, he continues to suffer from delusions, and lacks the insight into his mental illness necessary to assist in his defense. Mr. Thomas requests that this Court reverse the April 2018 commitment order and hold that his commitment under Section 4241 must be terminated. The District Court's April 2018 order continuing his commitment for an additional four months was error because the District Court applied the wrong legal standard. There was no basis for finding a substantial probability that Mr. Thomas is likely to be restored within the four months. How did the District Court – I'm curious why you argue that the District Court didn't follow the correct legal standard. Are you – is that really what you're arguing, or that he didn't – the facts that he applied didn't meet the correct legal standard? Your Honor, both. I think – Well, what is the correct legal standard? The Court must find under Section 4241d2 only permits commitment for an additional reasonable period of time if the Court finds that there is a substantial probability that within such additional period of time the defendant will attain the capacity to permit the proceedings to go forward. But there's multiple references in the record, and when the District Court is considering this, that he was aware of that standard. So I'm trying to figure out why you are saying he applied the incorrect legal standard. Well, first, the government concedes that the Court never identified the proper standard at the April 2018 hearing or in its written order. It's true that the defense – The written order? Is that the order you wrote? Your Honor, I did initially draft it. It was submitted to the government. The government reviewed the order and signed off on it before giving it to the District Court. But at the April – But, I mean, did you draft the order? Yes, Your Honor. I drafted the order. And so did it – in fact, I thought I saw in the proceedings that the judge directed the government to draft the order, and you said, I'd like to draft the order. And so then you drafted the order. So why didn't you include the correct legal standard? Your Honor, I – I referenced the correct legal standard in the briefing to the Court and at the April 2018 hearing. What the government – And did you include it? Did you include it in the draft order that you gave to the Court? I did not add findings that the Court had not made at the April 2018 hearing. Did you include the correct legal standard in the draft order that you gave to the Court? The statute was referenced, but I did not add findings. And so now you're faulting – you say the statute was referenced. Was the language of the statute included? The – the order that was submitted to the Court correctly and accurately reflected what the district court's findings at the April 2018 hearing. You're not answering my question, okay? No, it did not inherit the statute itself. And you drafted it. And now you're faulting the district court. I just find that really remarkable, and so I wanted to make sure and give you an opportunity to answer that, because you drafted it, you asked to draft it, the And now you stand here and you fault the district court for not including the proper legal standard in the order. So if that's – I'm trying to make sure I understand your argument. Yes. Well, just to be clear, the reason that I asked to draft the order had to do with delays in Mr. Thomas being transported, because there had been a history of delays. But I do want to point the Court out to the court – the district court's statements at the April 2018 hearing, because there was a dispute over what the proper legal standard was. And the Court said when I pointed out and I talked about the statute in reference 4241d.2, the Court responded when I said that there had not been any evidence that Mr. Thomas was likely to be restored within the commitment period. The Court said specifically, you can't have your cake and eat it, too. You can't say, well, he's not competent, but oh, by the way, you're hereby deprived of any further opportunity to try to restore him to competence. And so that doesn't make any sense to me. Maybe it does to somebody else, but it just doesn't to me. So the Court responded to the defense having pointed out and referenced the proper standard and rejected that standard. So at the April 2018 hearing, the district court made – stated specifically that it believed that the statute calls for an initial period of four months and then thereafter a reasonable period of time. And the Court made very clear that it believed as long as the Court found that the additional commitment period was reasonable, that was sufficient. And is reasonable defined in that statute? Reasonable is not defined in the statute, and I think the Court has to look both to Jackson v. Indiana, and I would encourage this Court to look to – And do we review for abusive discretion or clear error? Well, if you're looking at the findings – Because he made a determination, the district court. I think you have to – maybe you won't concede that this is a difficult case. I do think that this is a difficult case in a number of respects. Your client has a number of issues. It sounds like he suffered from mental illness for a considerable period. And it's a very unfortunate case. And it looks like the district court was trying to do the best it could and make a determination. And from what I can see, all the multiple references to the standard throughout the different hearings, including when the experts were testifying, had to make a tough call, like courts are often asked to do in these circumstances. I understand that you might disagree, but I'm trying to understand your best argument as to why the district court erred here. Well, Your Honor, I do think that the court applied the wrong legal standard, not only as the court noted – Would you show me someplace where he was confused about what he had to decide? I read this record as a conscientious judge trying very hard to deal with the difficult situation and understanding that he had to find that there was a substantial likelihood of the person regaining competency. Well, I think in the – So can you just show me where, other than the order that you drafted, the judge was confused about what he had to decide? Well, I think apart from the judge saying that he believed, because the facility had opined that he was competent, that they were basically entitled to a further opportunity at restoration, the court also referenced its concerns about dangerousness. The court referenced its concerns about dangerousness and said that – What record? Can you cite to the record? Yes. At page 460 – at ER-465, the court said that it believed its only other option was to release Mr. Thomas and hope that the State does something about him. And then at ER-466, the court said that sending him back to Springfield was necessary to protect society at large. And in Hoski, this Court found that a district court errs to the extent that it bases its decision to extend an individual's commitment on concerns about future dangerousness, that those are distinct issues. Fair enough. There was a lot of testimony between the experts here on what was happening with your client, I mean, the doctor from Springfield who had seen him 25 times who was giving her assessment of his mental health along with your expert about the mental health. And from what I recall in reading the record, the district court judge took a lot of time in listening, there was a lot of hearing time devoted to this case, and in incorporating everything he heard from those experts in making that ultimate determination on whether or not there was a substantial likelihood that mental health could be restored within the time that was allowed. But you're saying that those references is enough to say that he didn't follow the legal standard. That's your best argument here? Your Honor, I can turn to my other arguments in this case because I do think that even if the court finds that the district court was aware of the standard and applied the correct legal standard, that the additional commitment period was both unreasonable and that it was the finding itself was clear error under these facts. As the Supreme Court noticed — But it was in line with one of the experts, right? What was that? The decision was in line with the opinion of one of the experts. I don't think so. The government's expert, Dr. Tyner, the psychologist from the FMC Springfield, what she opined was that he — that it was likely he could be restored. She — that what she proposed was for him to be returned to Springfield and for his medication to be increased back up to the 10 milligrams, because when he had been returned to the local facility, the local facility felt that he was overmedicated and had reduced his medication. But in Loeffner, this Court noted that past experience is often the best prediction of future performance, and as she noted, the Court actually asked her, and she noted that the prior higher dosage didn't work. The Court said, let me interrupt you, and this is at ER 330, just for a second. So when he was getting a higher dose back then, he was still fixed on this delusion. Correct. He had not shaken himself free of the delusion. Correct. And she responded, that is correct. So past experience here shows that a higher dose of medication was not likely to render him competent. But she also testified that he was functioning pretty well at a 10. And I understand that's high. But she did testify that he was functioning pretty well at a 10. Well, I think even at the 8, he was functioning well in the sense of he was — he had definitely improved from his initial — And she said that she thought that he would be — could be restored. She's an expert in the field. Why was it clearly erroneous for the district court to accept her finding and to go with it? Because even — what she said is that he could be, not that she thought he — But she's a medical professional. She's a psychologist. And she says that he could be. So why can't — how is it clearly erroneous? And that's the standard that we have to apply here. I'm not sure I understand, but maybe you can think about that when you're sitting over here at the table. And I'll give you one minute for your rebuttal. Thank you. Thank you very much, Ms. Barrows. Good morning. May it please the Court. Nicole Reese Fox for the United States. I think the Court has recognized what our position is, which is that this is a difficult case, and the district court, over the course of three hearings, carefully considered whether the defendant had reached a level of competence as applied to the specific facts of his case. Well, this seems to be remedy day. What — what do we do if we say — what happens if we say, okay, the district court was fine in ordering him to be another, whatever, 120 days, which was a long time ago by now. So it goes back. Now what happens? Well, Your Honor, the court ordered Springfield to submit a 30-day status report. Yeah. I submitted the first one. I moved to supplement the record with that. I think — so if this Court — if this Court affirms, is that — is that your question, Your Honor, what happens next? Yeah. That's what I said, yeah. So at that point, Springfield will — will either issue a certificate of competency stating that Mr. Thomas has now met the competency standard that the district court articulated. And if not, if they certify that he is not recovered, then by — by operation of Section 4241, we move into civil commitment proceedings. So it's sort of — if the Court affirms things as they are — And there's a dangerousness hearing. Isn't there a dangerousness assessment made? Yeah. Under Section 4246, that — that assessment is first done by the facility, and they will do their dangerousness evaluation, and then that goes to the district court actually in Springfield to determine — to determine whether that finding is correct. Let me ask you, was there any other evidence other than Dr. Tyner's testimony to support the decision that the district court made that he could be restored within the time? That — that was the primary evidence. The district court has had this case throughout its — the life of the case and has had all the competency reports that Your Honors have showing this steady improvement with medication. Let me ask you about the timeline, because it seems like when he was arrested, things happened in a — what seemed to be in a fairly normal and timely pace. Found out that he was — you know, he had mental health issues. He went to the local, you know, place to find out if he had competency issues. It was determined — that happened pretty quickly. And so everything was happening within like a four-week period. And then he got sent to Springfield. Then there was a competency determination. And I think we're then at October of 2017. And he gets sent back to San Diego. And then there's not a hearing until February of 18. And it looks like he decompensated in that period. Can you explain what happened and why there was that delay? And is there something to explain what happened there? I — Your Honor, I'm not sure from October to January what was happening. Ms. Barros may be able to address that, since she was counsel below. I was not. But there were three hearings. So at the first evidentiary hearing, we had our expert fly in from Springfield, and the defense wanted to call an expert who wasn't available that date. So it was sort of — it got pushed out from January to February based on scheduling additional experts, additional testimony. Then in February was when Dr. Tyner appeared by video to testify a second time. And then the court sort of took it all — took all of the evidence under submission and issued the order. I think the — from January to March, I think it's just the court schedule and trying to accommodate all of the various experts. And who was the medical professionals that were tending to him while he was in San Diego? Because it looks like, you know, there were things happening there where he started to — Yeah. He was — so he was in — I believe he's in a sort of medical unit at the MCC. And the psychiatrist there disagreed, I guess, with Springfield psychiatrist's assessment of the risks and benefits of the medication, which is why the dose was reduced. Now, we don't know if his sort of slight decompensation is because of the medication, because of all the movement from Springfield to San Diego. There's no way to tell. Dr. Tyner, who, as Your Honor noted, has a lot of familiarity with this defendant and appears to have developed a very good rapport with him, she opined that an — that with the extra time and the extra dose, he could be restored. Let me ask you this, again, on the timing. It appears that Mr. Thomas is approaching the two-year mark of being in the government's competency to stand trial. In April, I guess, of this year, it was — he was in about a year and a half. Seems like a lengthy period of time for someone who's charged with felon impossession in particular. I mean, there was references to Loeffner. But I guess I just want to ask you, is that the total time in custody that we account for a reasonable period of time, or do we account for the time that he's actually at the medical facility? I just wanted to try to figure out a couple of these things, and why was it reasonable to order his commitment extended another 120 days after the District Court had already extended his commitment. So if you could do your best to answer some of those questions, I would appreciate it. I'd be happy to. I, too, had some of those same questions. And the research that I've done, I think in terms of the reason of the period of time and what we look to, I think it's a difficult question about, I think, the defense as we look at the amount of time he's medicated. In this Court's decision in United States v. Rivera-Guerrero, the Court looked at the commitment period, which was two years, two years at the Federal Medical Center. I think the Second Circuit in United States v. Magasuba, which is cited in both cases, looked at the circumstances test to determine whether the total time is unreasonable. And I think that that's an appropriate test to this question of reasonableness under the Due Process Clause. So I would turn the Court's attention there. In Magasuba, there were 19 months total confinement, and the Court found that that was reasonable under the circumstances. I also want to sort of remind the Court, the reason that the proceedings are so involved here is because the Court was applying a specific competency standard for this case. I think both experts agreed that Mr. Thomas had sort of the general markers of competence. He understood the proceedings against him. He could communicate with his attorney. The only question, really, in terms of competence was the extra, that extra piece of being able to appreciate that he had a mental illness and being willing to consider a not guilty by reason of insanity plea. So that sort of heightened standard is the only piece of competence that's left. And the district court found that that was required in this case. And even the defense expert acknowledged that in some cases, insight into one's mental illness is not relevant to the case, and a defendant can be competent even though he's not able to recognize that he has a mental illness. So we're talking about sort of a small piece of the competency puzzle that's left. And so the Court's decision to allow Springfield an additional 120 days to sort of do that additional work was reasonable. And the Court's, the options before the Court were basically 120 days, and then if he's still not competent, the civil commitment proceedings start, or just give up altogether and go straight to civil commitment proceedings. Either way, he was going to go back to Springfield, either for the 45 days under 4246 to have the dangerousness assessment or this extra period of time. Sotomayor, the Petitioner, the appellate now says he should be released. Now, under what circumstances would that be the option for the Court? The way I read the statutory scheme, I don't think that's an option. 4241 directs that if the defendant is not competent, at the end of subsection D, it says the defendant is subject to the provisions of sections 4246 and 4248. 4246 presumes that the defendant is at the facility for a dangerousness assessment, and section 4247b provides for a 45-day period for that assessment. So I don't understand how, by operation of the statutory scheme, he could be released into the general public. I think the options before the Court, he was going back to Springfield either way, and it was either 120 days to try, and then a dangerousness assessment, or just go straight to a dangerousness assessment. Thank you. Can you do that both at the same time? I believe so. I think it's a different process within the facility. But if this Court were to reverse at this point, we would just advise Springfield to move in, move to that process immediately. If you have moved to supplement the record with these progress reports, is it really appropriate for us to look at those? Again, I think it's a difficult question. I look to see, because in an interlocutory appeal, it seems to me there might be more reasons for supplementing the record, because the case is ongoing. This is so — Or there may be more reason to get it back to the district court to look at. Of course, that's for Your Honors to decide. I thought it would be helpful for the Court to have it, and whether the Court considers it in its determination is subject. So right now, when is he supposed to — what's his next important date? So I believe the next status — we got a status report in July that basically said things are the same as they were in June. I believe, if my calculations are right, mid-September, the 120 days would be up. So from now until mid-September, things are as they are, unless this Court changes course. And then, as I said, if this Court reverses, then the next step would be for the facility to do their dangerousness assessment. All right. Thank you very much. Thank you. Ms. Barrows, I'll give you one minute. As the Supreme Court noted in Jackson, there's substantial injustice in keeping an unconvicted person in custody to await trial where it is plainly evident that his mental condition will not permit trial within a reasonable period of time. In this case, Dr. Tyner testified that she wouldn't expect his mental status to change significantly. That was at ER 67. The difference — the dispute was between — Dr. Tyner had believed that he was competent on the higher dose, and the district court found that he was not because he was still delusional and he didn't understand that he was mentally ill and therefore couldn't make rational decisions about what type of plea to enter in this case. But the evidence below clearly indicated that he wasn't — his mental status wasn't expected to change even if he were — his medication was to be increased back to the 10 milligrams that he was taking initially. I think it was illogical and implausible to find that he would be restored within four months. At the time of his hearing, he had been medicated for over 17 months. He was on a hefty dose of medication, at one point a toxic dose, and he at all times remained delusional both about the facts of his case and denied having a thought disorder. Your Honor, with that, I would submit. Thank you, Ms. Farrells. Ms. Fox, appreciate your arguments here today. Very helpful. The matter of United States v. Donnell Thomas is now submitted.
judges: Siler, Schroeder, Murguia